633 A.2d 531

RONALD MARCHAK, PLAINTIFF–RESPONDENT, v. CLARIDGE COMMONS, INC., RONALD RACIOPPI, FRANK RACIOPPI, AND ZYGMUNT WILF, DEFENDANTS–APPELLANTS, AND SALVATORE MAURO, DEFENDANT.

Argued October 13, 1993—Decided December 8, 1993.

*Marc J. Friedman* argued the cause for appellants (*Rich & Friedman,* attorneys).

*Murray A. Klayman* argued the cause for respondent (*Ferdinand and Klayman,* attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

At issue is an arbitration clause in a contract for the purchase of a new home. The initial question is whether the arbitration clause comports with *The New Home Warranty and Builders' Registration Act, N.J.S.A.* 46:3B–1 to –20 (the Act). If so, does it bar the purchaser, Ronald Marchak, from suing the builder, Claridge

Commons, Inc. (Claridge), for construction defects? In an unreported opinion, the Law Division granted summary judgment for defendants Claridge and its principals, Ronald Racioppi, Frank Racioppi, and Zygmunt Wilf. The court also granted summary judgment for the municipal building inspector, Salvatore Mauro, and he no longer is in the case. The Appellate Division reversed and remanded for trial. 261 *N.J.Super.* 126, 132, 617 *A.*2d 1256, 1259 (1992). We granted the builder's petition for certification, 133 *N.J.* 440, 627 *A.*2d 1145 (1993), and now affirm.

–I–

Plaintiff, Marchak, contracted with Claridge to purchase a new single-family home in a subdivision in Union, New Jersey. The contract provided:

Seller shall provide buyer with insurance-backed warranty coverage and protection under New Jersey's Homeowners Warranty Act.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

Buyer and seller acknowledge and agree that the warranty and insurance remedies contained in the homeowners warranty provided by seller to buyer constitute the exclusive remedies of the buyer. The parties agree that the conciliation and arbitration procedures as outlined in the Homeowner's Warranty Act, are better suited to the determination of outstanding issues, if any, between the parties than any remedy which may be sucured [sic] by resort to legal process. Buyer represents that he has read the act to which reference is made and that he has secured the advice of counsel in making this election of remedies. This election of remedies, it is agreed, shall survive closing of title.

At the closing on July 13, 1987, Claridge delivered to Marchak a "Home Buyers Warranty," which provided in paragraph IV, Conciliation and Arbitration:

If the Builder and the Homeowner do not reach agreement with respect to the extent of, or the responsibility for, any alleged defects claimed in accordance with the warranty documents and the Construction Quality Standards, or if the Homeowner is not satisfied with any repair of defects made by the Builder, either the Builder or the Homeowner may request an impartial third party arbitration with the A.A.A., which will be conducted in accordance with its rules and regulations. The Homeowner can demand arbitration by completing a Request for Arbitration form which shall be provided by the Service. In accordance with the Act and the Regulations, the Homeowner has the right to pursue remedies other than conciliation and arbitration; however, election of other remedies shall bar the Homeowner

from pursuing the same claim under this warranty. Non–Magnuson–Moss rights and remedies pertaining to consumer products may be pursued without first resorting to the conciliation and arbitration process.

The "Home Buyers Warranty" included, among other warranties, a one-year warranty that the "housing unit" would be free from "[d]efects in materials or workmanship as established in the Constructive Standards," a two-year warranty covering "defects in the electrical, plumbing and mechanical systems," and a ten-year warranty on "major construction defects." The warranties were consistent with the requirements of the Act, which provides:

b. The time periods of warranties established pursuant to this act are as follows: (1) One year from and after the warranty date the dwelling shall be free from defects caused by faulty workmanship and defective materials due to noncompliance with the building standards as approved by the commissioner pursuant to [*N.J.S.A.* 46:3B–3a].

(2) Two years from and after the warranty date the dwelling shall be free from defects caused by faulty installation of plumbing, electrical, heating and cooling delivery systems; however, in the case of appliances, no warranty shall exceed the length and scope of the warranty offered by the manufacturer.

(3) Ten years from and after the warranty date for major construction defects as defined in this act.

[*N.J.S.A.* 46:3B–3b(1) to –3b(3).]

Both before and after the closing, Marchak submitted to Claridge "punch lists" for problems of varying importance. According to a September 6, 1991, report obtained by Marchak from consulting engineer Norman J. Coons, the house failed to meet the "Performance Standards" of *N.J.A.C.* 5C:25–3.5 to –3.6 and suffered from numerous defects. The defects ranged from structural failures, including the substitution of a wood support for a concrete-filled steel lolly column in the basement, to the omission of windows, insulation, and electrical outlets. The report concluded that Claridge had shown "blatant disregard for the safety and integrity of the building and its occupants."

According to Marchak, Claridge failed to correct the problems: Consequently, he filed the complaint on April 11, 1990, after the expiration of the two-year warranty period. Ultimately he alleged counts in negligence and fraud, as well as violations of the New

Jersey Consumer Fraud Act, *N.J.S.A.* 56:8–1 to –60. Because of the expiration of the warranty period, he did not assert claims for breach of warranty.

The Law Division granted Claridge's motion for summary judgment, finding that the arbitration clause constituted arbitration as Marchak's sole remedy. The Appellate Division agreed that the contract limited Marchak to arbitration. 261 *N.J.Super.* at 131, 617 *A.*2d at 1258. It ruled, however, that the limitation conflicted with the Act, *id.* at 132, 617 *A.*2d at 1259, which provides that homeowners "shall have the opportunity to pursue any remedy legally available . . .," *N.J.S.A.* 46:3B–9. The court concluded that "the attempt in this case to eliminate by contract the available statutory remedies is a clear violation of public policy and remedies." 261 *N.J.Super.* at 132, 617 *A.*2d at 1259.

## –II–

The Act standardizes the responsibilities of new-home builders by superseding a patchwork of municipal requirements providing for the licensing of builders and the provision of performance bonds. *N.J.S.A.* 46:3B–11. It requires all new-home builders to register with the Department of Community Affairs. *N.J.S.A.* 46:3B–5. To register, a builder must participate in the department's "new home warranty security fund or an approved alternate [sic] new home warranty security program." *Ibid.* The purpose of the security fund or an alternative program is to protect homeowners by providing a source of payment to correct deficiencies caused by culpable builders. *N.J.S.A.* 46:3B–7. Under the Act, an owner notifies the builder in writing of any defects. *N.J.S.A.* 46:3B–7c. If a builder who is covered through the department's fund does not repair the defects within a reasonable time, the owner may file a claim against the fund. *Ibid.* After investigation and, if necessary, a "contested case" hearing under the Administrative Procedures Act, *N.J.S.A.* 52:14B–1 to –21, the department reviews claims through a conciliation or arbitration procedure. *N.J.S.A.* 46:3B–7c. If "the owner is found to be in the

right," *ibid.,* and the builder does not correct the deficiency, the fund shall pay to the owner "an amount sufficient to cure the problem...." *Ibid.* "In such cases, the commissioner [of Community Affairs] may then proceed against the builder in accordance with" another provision of the Act. *Ibid.*

In addition to providing for conciliation and arbitration, the Act provides for an election of remedies by the buyer:

Nothing contained herein shall affect other rights and remedies available to the owner. The owner shall have the opportunity to pursue any remedy legally available to the owner. However, initiation of procedures to enforce a remedy shall constitute an election which shall bar the owner from all other remedies. Nothing contained herein shall be deemed to limit the owner's right of appeal as applicable to the remedy elected.

[*N.J.S.A.* 46:3B–9.]

Thus, under the Act, litigation, on the one hand, and arbitration or conciliation, on the other, are mutually exclusive. A buyer may submit a claim to litigation or arbitration, but not both.

Claridge elected not to participate in the department's fund. Instead, it obtained insurance issued by the Home Owner's Warranty Corporation (HOW), an alternative program approved pursuant to *N.J.S.A.* 46:3B–8. HOW's program, like that of the department, provides for informal dispute settlement. It recognizes that "State or federal laws may permit filing of suit without waiting" for an informal dispute settlement. Home Owner's Warranty Corp., *The Homeowner's Guide to HOW* 11 (1991).

Accordingly, section IV of Claridge's warranty provided Marchak with "the right to pursue remedies other than conciliation and arbitration; however, election of other remedies" would bar him "from pursuing the same claim under this warranty." Like *N.J.S.A.* 46:3B–9, Claridge's warranty contemplates arbitration and litigation as mutually exclusive alternative forms of dispute resolution.

The owner's right to sue, however, remains intact. By providing for claims against the department's security fund, *N.J.S.A.* 46:3B–7, or against alternative security programs, such as that

provided by HOW, *N.J.S.A.* 46:3B–8, the Act supplements an owner's right to sue. As *N.J.S.A.* 46:3B–9 specifically states, "Nothing contained herein shall affect other rights and remedies available to the owner."

Notwithstanding the Act's recognition of an owner's right to pursue either remedy, parties remain free to limit those remedies by mutual agreement. Thus, a builder and a homeowner may contract for arbitration as the exclusive remedy. Generally speaking, arbitration is a favored form of relief. *See Barcon Assocs. v. Tri–County Asphalt Corp.*, 86 *N.J.* 179, 186, 430 *A.*2d 214, 217 (1981) (listing statutes and cases favoring arbitration). More specifically, the Legislature has authorized persons to enter binding agreements to arbitrate and to accept the arbitrator's award. *N.J.S.A.* 2A:24–2. In sum, arbitrators function with the support, encouragement, and enforcement power of the State. *Barcon Assocs., supra,* 86 *N.J.* at 188, 430 *A.*2d at 218.

As a practical matter, moreover, arbitration and conciliation are particularly useful means for resolving construction-contract cases. In such cases, factual disputes tend to predominate over legal niceties. Questions such as whether a door bell is properly aligned, weather strips are loose, or recessed lighting fixtures contain bulbs of the correct wattage—all of which appeared on plaintiff's punch lists—do not require the attention of a Superior Court judge. An arbitrator or conciliator can resolve those questions. Resolving such questions in a judicial proceeding can be inefficient and wasteful. Often people are better served not by an adversary proceeding, replete with discovery and confined by the Rules of Evidence, but by an informal proceeding before an impartial arbitrator. In technical areas such as home building, moreover, arbitrators often bring expertise that can facilitate a fair and efficient resolution of a dispute.

Generally, "courts should enforce contracts as made by the parties." *Vasquez v. Glassboro Serv. Ass'n,* 83 *N.J.* 86, 101, 415 *A.*2d 1156, 1164 (1980). Honoring an agreement to submit a matter to arbitration is consistent with the premise that, as long

as the agreement does not violate public policy, parties may bargain freely. *See Life Ins. Co. of Virginia v. Hocroft Assocs.,* 256 *N.J.Super.* 328, 332, 606 *A.*2d 1150, 1152 (Ch.Div.1992). We perceive no policy consideration that would prevent homeowners and builders from agreeing to arbitrate their disputes. To this extent, we disagree with the Appellate Division's conclusion that a homeowner's agreement to arbitrate is contrary to public policy. The question remains whether Marchak agreed that arbitration was his sole remedy.

–III–

An agreement to arbitrate should be read liberally in favor of arbitration. *J. Baranello & Sons, Inc. v. Davidson & Howard Plumbing & Heating, Inc.,* 168 *N.J.Super.* 502, 507, 403 *A.*2d 919, 921 (App.Div.) (citing *Moreira Constr. Co. v. Township of Wayne,* 98 *N.J.Super.* 570, 576, 238 *A.*2d 185, 188 (App.Div.), *certif. denied,* 51 *N.J.* 467, 242 *A.*2d 15 (1968)), *certif. denied,* 81 *N.J.* 340, 407 *A.*2d 1214 (1979). A contractual provision in which a consumer elects arbitration as the exclusive remedy, however, must also be read in light of its effect on the consumer's right to sue. A clause depriving a citizen of access to the courts should clearly state its purpose. The point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue.

When reading a contract, our goal is to discover the intention of the parties. Generally, we consider the contractual terms, the surrounding circumstances, and the purpose of the contract. *Jacobs v. Great Pac. Century Corp.,* 104 *N.J.* 580, 586, 518 *A.*2d 223, 226 (1986); *Nitta v. Yamamoto,* 31 *N.J.Super.* 578, 580, 107 *A.*2d 515, 516 (App.Div.1954). Here, we need not go beyond the actual terms of the agreement to find that it did not clearly express the election of arbitration as the sole remedy. In so finding, we are aware that Marchak was represented by counsel at all relevant times, including when he signed the "Contract for Sale of Real Estate." The problem, therefore, is not inequality of

bargaining power between the parties. Rather, it is something more fundamental: the agreement simply does not state that the buyer elects arbitration as the sole remedy.

Instead, the contract limited Marchak to the "warranty and insurance remedies contained in the homeowners warranty provided by seller to buyer...." That warranty expressly recognized that the buyer retained "the right to pursue remedies other than conciliation and arbitration." Thus, the warranty did not preclude Marchak from suing. It merely required him to choose between arbitration and litigation. True, the contract contained precatory language stating that "[t]he parties agree that the conciliation and arbitration procedures as outlined in the Homeowner's Warranty Act, are better suited to the determination of outstanding issues, if any, between the parties than any remedy which may be sucured [sic] by resort to legal process." But buyers could readily agree to such a provision as a matter of philosophy and still believe that they were retaining the right to sue. The provision cannot reasonably be read as Marchak's election of arbitration as his sole remedy. Marchak never elected arbitration as his exclusive remedy.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.