**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5215-15T3

REGINA M. FOTI,
Individually and
On Behalf of All
Others Similarly
Situated,

    Plaintiff-Appellant,

v.

TOYOTA MOTOR SALES,
U.S.A., INC.,

    Defendant-Respondent.

_____

        Argued January 24, 2017 — Decided  April 24, 2017

        Before Judges Messano and Espinosa.

        On appeal from the Superior Court of New
        Jersey, Law Division, Gloucester County,
        Docket No. L-0981-15.

        Lewis G. Adler argued the cause for appellant
        (Mr. Adler and Law Office of Paul DePetris,
        attorneys; Mr. Adler, on the briefs).

        J. Gordon Cooney, Jr. (Morgan, Lewis &
        Bockius) of the Pennsylvania bar, admitted pro
        hac vice, and Franco A. Corrado argued the
        cause for respondent (Morgan, Lewis & Bockius,
        attorneys; Mr. Corrado and Sean J. Radomski,
        on the brief).

PER CURIAM

Plaintiff Regina M. Foti leased a 2014 Toyota Corolla from Classic Imports, Inc. (Classic).[1] She executed a written lease agreement (the lease) that bore the insignia and name of Toyota Financial Services, and specifically defined the term "lessor" as including Classic, its anticipated assignee, Toyota Lease Trust (TLT), and any future assignee. The lease also stated that Toyota Motor Credit Corporation (TMCC) would be "servicing the [l]ease." The final page was an assignment of the lease from Classic to TLT.

The lease contained a broad arbitration provision (the arbitration agreement) that provided in part:

> You agree that any claims <u>arising from or relating to this Lease or related agreements or relationships</u>, including the validity, enforceability, arbitrability or scope of this Provision, at your or our election, are subject to arbitration. <u>This includes, without limitation, claims in contract, tort, pursuant to statute, regulation, ordinance or in equity or otherwise, and claims asserted by you against us, and the following Covered Parties: [TLT], TMCC, and/or any of our or its affiliates and/or any of our or their employees, officers, successors, assigns</u> or against any third party providing any product or service in connection with the Lease that you name as a co-defendant in any action against any of the foregoing.[2]

---

[1] Classic apparently did business as Toyota of Turnersville.

[2] When we quote the language of the lease, we continue to use its defined terms:  "you," "your," or "yours" refer to plaintiff; and "we," "us," and "our" refer to Classic, TLT and any future assignee.

A-5215-15T3

[(Emphasis added).]

The arbitration agreement also included in bold print a class action waiver:

> We, the Covered Parties and you are prohibited from participating in a class action or private attorney general action in court or class-wide arbitration with respect to any claims we, the Covered Parties or you have asserted against one another or other beneficiaries of this Provision. There should also be no joinder or consolidation of parties, except for multiple parties to this Lease.

The arbitration agreement further provided in capitalized text:

> IF ANY PARTY ELECTS ARBITRATION WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE NOR ANY COVERED PARTY WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT; TO HAVE A JURY TRIAL ON THAT CLAIM; TO ENGAGE IN PREARBITRATION DISCOVERY EXCEPT AS PROVIDED FOR IN THE RULES OF THE ADMINISTRATOR; OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO SUCH CLAIM. . . . OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY NOT BE AVAILABLE IN ARBITRATION.

The following appeared at the end of the arbitration agreement in bold print: "By signing below, you agree that at the request of either you or us any controversy or claim between you and us shall be determined by neutral binding arbitration in accordance with the terms of this Arbitration Provision." Plaintiff executed the lease in two places — immediately below this bold-print provision and again at the end of the lease.

3

In July 2015, plaintiff filed a complaint on behalf of herself and other similarly situated consumers against defendant Toyota Motor Sales, U.S.A., Inc., alleging two violations of the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18. She claimed the vehicle's warranty notice (1) contradicted and misstated consumers' rights under New Jersey's Lemon Law (Lemon Law), N.J.S.A. 56:12-29 to -49, requiring notice by certified mail return receipt requested to the manufacturer prior to making a Lemon Law complaint; and (2) in doing so, failed to include the verbatim language required by the Lemon Law and its regulations.

Before filing an answer, defendant moved to compel arbitration, and plaintiff cross-moved for partial summary judgment. After considering oral argument, the motion judge granted defendant's motion, entering an order compelling arbitration, requiring plaintiff to "pursue the claims . . . on an individualized basis" and dismissing the complaint without prejudice.[3]

Before us, plaintiff argues the judge erred, because there was "no meeting of the minds" and therefore no "enforceable agreement"; as non-signatory to the lease, defendant was not

---

[3] A second order denied plaintiff's cross-motion.

entitled to enforce the arbitration agreement; the arbitration agreement does not apply to plaintiff's claim because issues concerning the manufacturer's warranty are exempted from its terms; because plaintiff's complaint is brought as a "private attorney general" action, it is beyond the scope of the arbitration agreement; and, the arbitration agreement is "unenforceable as to the putative class." Having considered these arguments in light of the record and applicable legal standards, we affirm.

We conduct a de novo review of the trial court's order compelling arbitration. Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013). "In reviewing such orders, we are mindful of the strong preference to enforce arbitration agreements . . . ." Ibid. When evaluating a motion to dismiss a complaint and compel arbitration, a court must undertake a two-pronged analysis. First, the court must determine whether the parties have entered into a valid and enforceable agreement to arbitrate disputes. Id. at 188. Second, the court must determine whether the dispute falls within the scope of the agreement. Ibid.

"[S]tate contract-law principles generally . . . determin[e] whether a valid agreement to arbitrate exists." Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006). "In evaluating the existence of an agreement to arbitrate, a court 'consider[s] the contractual terms, the surrounding circumstances, and the purpose

of the contract.'" Hirsch, supra, 215 N.J. at 188 (alteration in original) (quoting Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282 (1993)). Plaintiff argues that, while she may have agreed to arbitrate certain disputes, she never agreed to arbitrate any disputes with defendant, who was a non-signatory to the lease.

"The United States Supreme Court has recognized that, in the context of arbitration, 'traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third party beneficiary theories, waiver and estoppel.'" Ibid. (emphasis added) (quoting Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631, 129 S. Ct. 1896, 1902, 173 L. Ed. 2d 832, 840 (2009)). The arbitration agreement in this case specifically included TLT, TMCC, "and/or any of our or its affiliates." We reject plaintiff's assertion that she did not know defendant was affiliated with TLT or TMCC because the language of the arbitration agreement was confusing.[4]

_____

[4] Plaintiff's brief cites a number of California decisions and argues the federal Ninth Circuit Court of Appeals has specifically rejected defendant's asserted grounds for compelling arbitration as an affiliate of the signatory. Close examination reveals none of those decisions are particularly persuasive, because the arbitration agreement at issue in those decisions did not include the "affiliate" language contained in this lease. See Kramer v.

Plaintiff further argues that her claims fall outside the scope of the arbitration agreement. She contends the TCCWNA claims involve inadequacies and inaccuracies of the Lemon Law statement provided by defendant and "in no way implicate the lease, which expressly leaves plaintiffs to pursue such remedies against the manufacturer alone via its warranty." We again disagree.

Clearly, "a court may not rewrite a contract to broaden the scope of arbitration." Hirsch, supra, 215 N.J. at 188 (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001)). However, the arbitration agreement in this case covered

> any claims arising from or relating to th[e] Lease or related agreements or relationships, including the validity, enforceability, arbitrability or scope of this Provision, at your or our election, are subject to arbitration. This includes, without limitation, claims in contract, tort, pursuant to statute, regulation . . . or otherwise . . . .

Toyota Motor Corp., 705 F.3d 1122, 1124, 1127 n.3 (9th Cir. 2013) (arbitration provisions did not include "covered party" language and Toyota did not contend it was "a transferee, employee or agent of the dealership" such that it could compel arbitration); In re Toyota Motor Corp., 838 F. Supp. 2d 967, 988-90 (C.D. Cal. 2012) (no express "covered party" language in the arbitration provisions); Soto v. Am. Honda Motor Co., 946 F. Supp. 2d 949, 955 (N.D. Cal. 2012) (reasoning the term "third parties" in the arbitration provision did not include the defendant manufacturer).

A-5215-15T3

[(Emphasis added).]

Plaintiff acknowledges that the Lemon Law requires defendant to provide the notice, see N.J.S.A. 56:12-34(a), and TCCWNA required Classic, as lessor, to deliver the notice. N.J.S.A. 56:12-15. Moreover, the lease expressly advised plaintiff that the car was "subject to the standard new warranty from the manufacturer." In short, the Lemon Law notice was clearly a related agreement that arose from the lease itself, and we reject any contention that the terms and conditions in the Lemon Law notice rendered the provisions of the arbitration agreement sufficiently ambiguous so as to foreclose its enforceability.

Plaintiff argues that, even if the class-action waiver provision applies, claims on behalf of the putative class must be stayed pending her individual arbitration. We again disagree.

Plaintiff misconstrues AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011), to support her claim. In Concepcion, the Supreme Court upheld the validity of class action waiver provisions, stating businesses may require consumers to bring claims only in individual arbitrations, rather than in court as part of a class. Concepcion, supra, 563 U.S. at 346-52, 131 S. Ct. at 1749-53, 179 L. Ed. 2d at 755-59. Plaintiff cites to our Court's decision in Muhammad v. County Bank of

Rehoboth Beach, Delaware, 189 N.J. 1, 22 (2006), cert. denied, 549 U.S. 1338, 127 S. Ct. 2032, 167 L. Ed. 2d 763 (2007), as support for the proposition that a class-arbitration waiver in a consumer contract was unconscionable. However, the Third Circuit Court of Appeals held the Federal Arbitration Act (the FAA), 9 U.S.C.A. § 1 to § 16, pre-empted that holding.

> [A] state law that seeks to impose class arbitration despite a contractual agreement for individualized arbitration is inconsistent with, and therefore preempted by, the FAA, irrespective of whether class arbitration is desirable for unrelated reasons. Therefore, . . . the rule established by the New Jersey Supreme Court in Muhammad is preempted by the FAA.
>
> [Litman v. Cellco P'ship, 655 F.3d 225, 231 (3d Cir. 2011) (emphasis added) (internal quotations and citation omitted).]

Lastly, plaintiff contends she filed her complaint as a "private attorney general action," which is expressly excluded by the arbitration agreement. We find no support for this proposition either in plaintiff's brief or elsewhere. By the express terms of the arbitration agreement, plaintiff waived her right to "participat[e] in a class action or private attorney general action in court or class-wide arbitration." There is nothing in the arbitration agreement that exempts plaintiff's individual claims, however characterized, from arbitration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9

A-5215-15T3