**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3475-18T2

DEBBY DAILEY,

     Plaintiff-Respondent,

v.

BOROUGH OF HIGHLANDS,
BRIAN GEOGHEGAN,
PAUL VITALE and BRIAN
CHABAREK, ESQ.,

     Defendants-Respondents,

and

BRIAN CHABAREK, ESQ.,

     Third-Party Plaintiff-Respondent,

v.

MONMOUTH COUNTY MUNICIPAL
JOINT INSURANCE FUND,[1]

     Third-Party Defendant-Appellant.

_____

---

[1] Improperly pled as Monmouth County Joint Insurance Fund.

Argued December 12, 2019 – Decided  October 28, 2020

Before Judges Suter and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law
Division, Monmouth County, Docket No. L-3351-17.

Jessica V. Henry argued the cause for third-party
defendant/appellant (Cleary Giacobbe Alfieri Jacobs
LLC, attorneys; Jessica V. Henry, of counsel and on the
briefs).

James A. Paone, II argued the cause for third-party
plaintiff/respondent (Davison, Eastman, Muñoz, Paone,
PA, attorneys; James A. Paone, II, of counsel and on
the brief; Kaitlyn R. Campanile, on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Third-party defendant Monmouth County Municipal Joint Insurance Fund (JIF) appeals from the March 8, 2019 order of the Law Division denying its motion to dismiss the third-party complaint of defendant/third-party plaintiff Brian Chabarek, Esq.  We vacate the order and remand.

I.

The following facts are derived from the record.  Plaintiff Debby Dailey, an employee of defendant Borough of Highlands, filed a complaint in the Law Division against the borough and three municipal officials seeking damages for physical injuries she suffered when she fell through the attic floor of a building

owned by the municipality. Dailey alleges she was directed by Chabarek, the township attorney, and defendant Brian Geoghegan, the borough administrator, to enter the building, which had previously been deemed unsafe and in need of demolition by defendant Paul Vitale, the borough code official. According to plaintiff, the defendants sent her into the building to retrieve an archived file, even though they were aware that other borough employees had been injured as a result of the dangerous condition of the structure.

Chabarek requested defense and indemnification as a third-party beneficiary of an insurance policy issued to the borough by JIF, a statutory organization in which the borough is a member. JIF, through its administrator, declined Chabarek's request, taking the position that the policy excludes coverage for damages for personal injuries arising out of rendering a professional service. Chabarek thereafter filed a third-party complaint against JIF, seeking a declaratory judgment that he is entitled to defense and indemnification coverage under the policy.

JIF moved to dismiss the third-party complaint, arguing the borough had agreed on behalf of its third-party beneficiaries to arbitrate coverage disputes under the policy. In support of its argument, JIF relied on the following provisions of the policy:

3

6.     LEGAL ACTION AGAINST US

No person or organization has a right under this Policy:

a.     To join us as a party or otherwise bring us into a suit asking for damages from any Member Entity; or

b.     To sue us under this Policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against a Member Entity obtained after actual trial . . . .  An agreed settlement means a settlement and release of liability signed by us, the Member Entity and either the claimant or the claimant's legal representative.

10.    ARBITRATION

Should an irreconcilable difference of opinion arise as to the rights and obligations under the Policy, it is hereby agreed, that, as a CONDITION precedent to any right of action under or on account of this Policy, such difference shall be submitted to arbitration.   Such arbitration may be requested or demanded by either you or us.  The requests or demand for arbitration shall be made in writing and in accordance with the Notice provisions of CONDITION 11 of these POLICY CONDITIONS.   In the event that arbitration is requested or demanded, then we shall appoint one arbitrator and you shall appoint one arbitrator within thirty (30) days of the receipt of the written request or demand for arbitration.   The two arbitrators thus appointed shall promptly confer the appointment of an impartial umpire.

If either you or we fail to appoint an arbitrator within thirty (30) days after being required [sic] by the other

4

party in writing to do so, or if the arbitrators fail to appoint an umpire within thirty (30) days of request in writing by either of them to do so, or for any other reason there shall be a lapse or failure in the naming of an arbitrator or an umpire or in filling a vacancy, then such arbitrator or umpire, as the case may be, shall at your or our request be appointed by a Judge of the Superior Court of New Jersey sitting in either the County in which our offices are located or in the County in which your offices are located in accordance with the provisions of the New Jersey Arbitration Act . . . .

The arbitration shall take place at our offices, unless some other location is mutually agreed upon by both of us. The applicant shall submit its case within one month after the appointment of the umpire by the arbitrators or the Court and the respondent shall submit its reply within one month after service of the applicant's submission. The arbitrators and umpire are relieved from all judicial formality and may abstain from following the strict rules of law. They shall settle any dispute under this agreement according to an equitable rather than a strictly legal interpretation of its terms, and their decision shall be final and not subject to appeal.

Each party shall bear the expense of its arbitrator and shall jointly and equally share with the other the expenses of this [sic] umpire and of the arbitration.

It is unclear from the record whether the municipality took a position on JIF's motion.

The trial court issued an oral opinion denying the motion, relying primarily on the holding in Atalese v. U.S. Legal Services Group, 219 N.J. 430 (2014).  The trial court observed that in Atalese,

> the Supreme Court has held that the absence of any language in the [arbitration] provision that plaintiff was waiving her statutory right to seek relief in a court of law renders such a provision unenforceable.  An arbitration provision, like any other comparable contractual provision that provides for surrendering of a constitutional or statutory right, must be sufficiently clear to a reasonable consumer.

In addition, the trial court reasoned that

> [a]s in the case of Atalese, the provision at issue does not explain what arbitration is nor does it indicate how arbitration is different from a proceeding in a court of law. . . . Most importantly, there is nothing in the plain language that would be clear and understandable to the average consumer that he or she is waiving statutory rights for a jury.

Thus, the court concluded, there was no evidence of a "mutual assent to waive adjudication by a court of law."  A March 8, 2019 order memorializes the court's decision.

This appeal followed.  JIF raises the following arguments:

> THE TRIAL COURT ERRED IN FAILING TO ENFORCE THE MANDATORY ARBITRATION PROVISION.
>
> (A)  THE STANDARD OF REVIEW IS DE NOVO.

6

(B)    THE ARBITRATION PROVISION GOVERNS THE THIRD[-]PARTY COMPLAINT.

(C)    THE TRIAL COURT ERRED IN ITS APPLICATION OF CONSUMER FRAUD PRECEDENT TO THIS MATTER.

(D)    THE TRIAL COURT DEPARTED FROM THE SUPREME COURT'S MANDATE OF "EQUAL FOOTING" FOR ARBITRATION AGREEMENTS.

II.

We apply a de novo standard of review to the trial court's determination of the enforceability of a contract provision. Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019). "The enforceability of arbitration provisions is a question of law; therefore, it is one to which we need not give deference to the analysis by trial court." Ibid.

Federal and state statutes express a general policy favoring arbitration. Atalese, 291 N.J. at 440; see also 9 U.S.C.A. §§ 1 to 16; N.J.S.A. 2A:23B-1 to -32. "The public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court." Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 556 (2015). "Because of the favored status afforded to arbitration, '[a]n agreement to arbitrate should be read liberally in favor of arbitration.'" Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.,

168 N.J. 124, 132 (2001) (quoting Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282 (1993)). Although enforcement is favored, that "does not mean that every arbitration clause, however phrased, will be enforceable." Atalese, 219 N.J. at 441.

A valid arbitration clause "must state its purpose clearly and unambiguously." Id. at 435. In addition, an agreement to arbitrate "must be the product of mutual assent," which "requires that the parties have an understanding of the terms to which they have agreed." Id. at 442 (quoting NAACP v. Foulke Mgmt., 421 N.J. Super. 404, 424 (App. Div. 2011)). A party "cannot be required to arbitrate when it cannot fairly be ascertained from the contract's language that she knowingly assented to the provision's terms or knew that arbitration was the exclusive forum for dispute resolution." Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 322 (2019).

In Atalese, the Supreme Court invalidated an arbitration provision of a consumer contract of adhesion because it: (1) did not include an explanation that the plaintiff was waiving her right to seek relief in court; (2) did not explain what arbitration is or how it differs from seeking judicial relief; and (3) lacked the plain language necessary to convey to the average consumer that he or she is waiving the right to sue in court. 219 N.J. at 446. The Court noted that "an

average member of the public may not know – without some explanatory comment – that arbitration is a substitute for the right to have one's claim adjudicated in a court of law." Id. at 442. Thus, an arbitration clause "in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute." Id. at 447. "No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." Id. at 444.

The Court later recognized that its holding in Atalese was primarily driven by the fact that it was examining a consumer contract. The Court explained:

> We were guided essentially by twin concerns. First, the Court was mindful that a consumer is not necessarily versed in the meaning of law-imbued terminology about procedures tucked into form contracts. The decision repeatedly notes that it is addressing a form consumer contract, not a contract individually negotiated in any way; accordingly, basic statutory consumer contract requirements about plain language implicitly provided the backdrop to the contract under review. And, second, the Court was mindful that plain language explanations of consequences had been required in contract cases in numerous other settings where a person would not be presumed to understand that what was being agreed to constituted a waiver of a constitutional or statutory right.
>
> . . . .
>
> The consumer context of the contract mattered.

A-3475-18T2

[Kernahan, 236 N.J. at 319-20.]

We do not agree with the trial court's conclusion that the circumstances here are equivalent to those before the Court in <u>Atalese</u>. Chabarek is not a consumer and did not sign a contract of adhesion. He is not a party to the JIF policy. He is, instead, a third-party beneficiary of a contract between JIF and the municipality. "Nonsignatories of a contract . . . may . . . be subject to arbitration if the nonparty is an agent of a party or a third[-]party beneficiary to the contract." <u>Garfinkel v. Morristown Obstetrics & Gynecology Assocs.</u>, 333 N.J. Super. 291, 308 (App. Div. 2000), <u>rev'd on other grounds</u>, 168 N.J. 124 (2001). For example, we have upheld application of an arbitration provision in an insurance policy against the insured's minor son. <u>Allgor v. Travelers Ins. Co.</u>, 280 N.J. Super. 254 (App. Div. 1995). Chabarek, as an employee of the municipality seeking defense and indemnification under its insurance policy, is bound by the terms of the policy to which the municipality agreed.

It is the municipality's assent to arbitration, not Chabarek's, that is critical to deciding JIF's motion. We, therefore, vacate the March 8, 2019 order and remand for resolution of JIF's motion based on a determination of whether JIF and the municipality agreed by mutual assent to arbitration of coverage disputes under the policy. If so, Chabarek is bound by that agreement.

In order to determine whether JIF and the municipality mutually assented to submit coverage disputes to arbitration, the trial court must consider "the contractual terms, the surrounding circumstances, and the purpose of the contract." Marchak, 134 N.J. at 275. Municipalities are authorized by statute to join other local government units to form a JIF for the purpose of providing liability insurance. N.J.S.A. 40A:10-36. Each member municipality has the authority to appoint an insurance commissioner who is eligible for election to the JIF's executive committee. N.J.S.A. 40A:10-37. JIF has the statutory authority to provide insurance to its members by self-insurance, as happened here. N.J.S.A. 40A:10-42.

The record does not reflect the extent to which the municipality negotiated the terms of the policy. Nor does the record illuminate the role played by the municipality's JIF commissioner, who may have been a member of its executive board, in formulating JIF's desire to have coverage disputes under its policies decided by arbitration. That interest presumably is shared by the municipality, given that arbitration would reduce costs and preserve resources for the organization of which the municipality is a member.

In addition, the sophistication of the parties may bear on whether they knowingly and voluntarily agreed to a contract's terms. See McMahon v. City

of Newark, 195 N.J. 526, 546 (2008) (enforcing a contract between sophisticated parties). While sophistication alone is a not a sufficient ground on which to enforce an arbitration provision, Garfinkel, 168 N.J. at 136, the heightened scrutiny given to an arbitration provision in a consumer contract is not warranted where, as presumably is the case here, both parties to the contract were represented by counsel at the time the agreement was executed.

We leave to the trial court's discretion whether an evidentiary hearing is necessary to determine whether JIF and the municipality mutually assented to arbitrate coverage disputes under the policy. The issue may be amenable to resolution by submission of affidavits if the municipality agrees with JIF's position.

The March 8, 2019 order is vacated and the matter is remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3475-18T2