**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-3037

_____

FED CETERA LLC,
A New Jersey limited liability company,
Appellant

v.

NATIONAL CREDIT SERVICES, INC.,
A Washington Corporation

_____

On Appeal from the United States District Court
for the District of New Jersey
(Case No. 1-17-cv-02809)
District Judge:  Honorable Robert B. Kugler

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 23, 2022

_____

Before:  CHAGARES, <u>Chief</u> <u>Judge</u>, MCKEE, and PORTER, <u>Circuit</u> <u>Judges</u>

(Opinion filed: September 27, 2022)

_____

OPINION[*]

_____

---

[*]     This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

At issue in this case is whether appellant Fed Cetera is owed a finder's fee for a federal contract between appellee National Credit Services ("National Credit") and the Department of Education. The District Court read the agreement to not require a fee and granted summary judgment for National Credit. We will reverse for the reasons set forth below.

## I.

We write for the parties and recite only the facts necessary for disposition of this case. National Credit is a debt collection agency. In 2010, National Credit entered into an agreement with Net Gain, a consulting company, to help National Credit secure federal contracts in debt collection. Net Gain later assigned its rights under the agreement to Fed Cetera, a New Jersey limited liability company.

Net Gain helped National Credit to secure a subcontract with another collection agency, for which Net Gain received a finder's fee. Thereafter, the Department of Education ("DOE") invited National Credit to compete for a general contract with the agency. National Credit and the DOE signed a contract in 2014, although National Credit did not begin performing work on the contract until late 2016.

National Credit refused to pay Fed Cetera a finder's fee for this contract, and Fed Cetera filed a lawsuit in the District of New Jersey. National Credit argued that even though it signed a contract with the DOE while the agreement with Net Gain/ Fed Cetera

was still in place, it did not become eligible to receive work orders or start performing until after the agreement expired in 2016, and so the contract had not been "consummated" for purposes of the agreement during the applicable period. The District Court agreed and granted a motion for judgment on the pleadings for National Credit.

Fed Cetera appealed, and this Court reversed. See Fed Cetera, LLC, v. Nat'l Credit Servs., Inc., 938 F.3d 466 (3d Cir. 2019). We held that the contract had been "consummated" when it was formed in 2014 and remanded to the District Court for further proceedings. Id. at 471, 473. On remand and after discovery, the court granted summary judgment for National Credit, this time based on a different provision of the agreement. Fed Cetera timely appealed.

## II. [1]

This agreement is governed by New Jersey law. In interpreting contracts, New Jersey courts "consider the contractual terms, the surrounding circumstances, and the purpose of the contract." Marchak v. Claridge Commons, Inc., 633 A.2d 531, 535 (N.J. 1993). Where the "language of a contract is plain and capable of legal construction, the language alone must determine the agreement's force and effect." Manahawkin Convalescent v. O'Neill, 85 A.3d 947, 958–59 (N.J. 2014) (quotation marks omitted).

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332, and we have appellate jurisdiction under 28 U.S.C. § 1291. We review the District Court's grant of summary judgment de novo and apply the same standard as that court. See Nicini v. Morra, 212 F.3d 798, 805–06 (3d Cir. 2000). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

3

However, "[e]ven in the interpretation of an unambiguous contract, [courts] may consider all of the relevant evidence that will assist in determining its intent and meaning." Id. at 959 (quotation marks omitted).

The agreement between National Credit and Net Gain specifies that a finder's fee is owed whenever a "Fee Transaction is consummated." Appendix ("App.") 20. The term "Fee Transaction" is further defined in two parts. First, a "'Fee Transaction' means the consummation, with any Federal contractor, of any transaction related to 'teaming' or 'subcontracting' . . . during the Applicable Period." App. 20. Second, and as relevant here:

> The term "Fee Transaction" also means the subsequent consummation of any contract with any Federal government agency for which [National Credit] has been invited to compete, and is later awarded a contract to perform, which both parties herein expressly agree shall have arisen due to any "teaming" or "subcontracting" engagement Finder may have facilitated in advance of any such award of a contract by a Federal government agency.

Id.

We previously discussed the interaction of these clauses, explaining that "[t]o win a student debt collection contract from the federal government, a debt collector typically must follow a convoluted but – within the industry – well-known path." Fed Cetera, 938 F.3d at 468. The company must first work as a subcontractor, and "[i]f that subcontract goes well, then the company may have an opportunity to receive a direct federal contract the next time around." Id. With this background, we read the two clauses above to provide that "Net Gain agreed to introduce National Credit to a federal contractor" in the hopes of securing a subcontract with that contractor. Id. "That subcontract," in turn

4

"could ultimately lead National Credit to win a direct federal contract of its own." Id. In such a case, "National Credit would owe Net Gain a 2.5% finder's fee for both contracts." Id.

The District Court read the clause at issue to "unambiguously" require that in order for Net Gain to earn a finder's fee on a general contract between National Credit and a federal agency, "said general contract must have arisen due to subcontracting or teaming that Net Gain facilitated." App. 7. The court went on, however, to analyze whether Net Gain "facilitated" the general contract with the DOE and concluded that it did not. This was not the proper inquiry. Requiring "facilitation" by Net Gain of the general contract eliminates language from the clause and changes its meaning. Under the plain language of the contract, and as explained by our previous decision in this case, the inquiry should focus on whether the general federal contract has "arisen due to" the previous subcontract facilitated by Net Gain. App. 6; Fed Cetera, 938 F.3d at 468.

Fed Cetera argues that the contract did arise "due to" the previous subcontract. For example, when National Credit announced its contract with the DOE, National Credit stated that "[National Credit's] strong performance on the [subcontract] ultimately secured their award of the [DOE] small business contract." App. 259. National Credit, on the other hand, asserts that the general contract did not arise due to the previous subcontract. See National Credit Br. 17 (arguing that it was its "performance, hard work, and reputation that secured the Solicitation, and ultimately, work orders from [DOE]"). We do not resolve these factual disputes in the first instance and will remand for the

5

District Court to more fully consider whether a genuine dispute of material fact exists that precludes summary judgment.[2]

National Credit argues, and the District Court noted, that discussion of the agreement centered around subcontracting — indeed, the agreement is titled "Teaming/ Subcontracting Finder's Agreement." App. 19. But an agreement focused on subcontracting is not mutually exclusive with a provision for payment based on future events stemming from that subcontract. National Credit protests that this is inherently unfair, since Net Gain did not assist in the actual solicitation process with the DOE. However, we "cannot make for [a party] a better or more sensible contract than the one they made for themselves." Kotkin v. Aronson, 815 A.2d 962, 963 (N.J. 2003) (per curiam) (citing Kampf v. Franklin Life Ins. Co., 161 A.2d 717 (N.J. 1960)). Indeed, much of National Credit's argument focuses on the fact that work orders from the DOE began after the agreement with Net Gain had ended. We already concluded that the fee transaction was "consummated" for purposes of the agreement during the agreement period, see Fed Cetera, 938 F.3d at 471, and so these arguments are unavailing.

## III.

For the foregoing reasons, we will reverse the judgment of the District Court.

---

[2] We note that the clause in the agreement requires that "both parties herein expressly agree" a general contract "shall have arisen" due to the subcontracting. App. 20. The use of multiple tenses in the clause is understandably confusing, and the parties offer differing interpretations of what this "express agreement" means. It appears the parties did not raise these arguments before the District Court, and the District Court did not consider this language in its decision. To the extent that this language is ambiguous, its meaning may present a question of fact for resolution by a factfinder. See Fed Cetera, 938 F.3d at 473 n.36.