995 A.2d 300 (2010)
413 N.J. Super. 363
COAST AUTOMOTIVE GROUP, LTD., Tamim Shansab, Shansab Realty, Inc., Plaintiffs-Appellants,
v.
WITHUM SMITH & BROWN, Larry G. Thoma, Randall M. Paulikens, Robert J. Brown, Jr., Defendants-Respondents.
DOCKET NO. A-0226-08T1.
Superior Court of New Jersey, Appellate Division.
Argued November 17, 2009.
Decided May 19, 2010.
*301 Geoffrey J. Hill, Woodcliff Lake, argued the cause for appellants.
Michael J. Canning argued the cause for respondents (Giordano, Halleran & Ciesla, attorneys; Mr. Canning, of counsel and on the brief; Kelly D. Gunther, Red Bank, on the brief).
Before Judges WEFING, GRALL and LEWINN.
The opinion of the court was delivered by
GRALL, J.A.D.
This litigation was commenced in July 2006. It involves a dispute between defendantsWithum Smith & Brown (WSB), a professional group of certified public accountants and consultantsand plaintiffsCoast Automotive Group, Ltd.; its landlord, Shansab Realty, Inc.; and Shansab's president, Tamim Shansab (collectively plaintiffs). By agreement executed on July 12, 2005, plaintiffs retained WSB as an expert in connection with their litigation against Universal Underwriters. Universal was the insurer of property damaged in a fire. The fire occurred on March 11, 2001, at a dealership operated *302 by Coast on premises leased from Shansab.
Based upon a provision of the parties' retainer agreement, the judge compelled them to arbitrate plaintiffs' allegations of breach of contract and the covenant of good faith and fair dealing and defendants' counterclaims, which allege breach of contract by failure to submit payment; fraud in the inducement; and unjust enrichment. Several of plaintiffs' claims sounding in tort were dismissed for failure to state a claim. R. 4:6-2(e).[1] One claim not referred to the arbitrator survived WSB's motions to dismissplaintiffs' claim alleging professional malpractice, which is pending before the trial court.
Plaintiffs appeal and contend that a claim for consequential damages resulting from WSB's breacha claim resting on their allegation that WSB's breach placed them in a position in which they were compelled to accept an unfavorable settlement with Universalis not within the scope of the arbitration clause.[2] The only significant question raised on this appeal is the propriety of the judge's construction of the parties' agreement to arbitrate. We conclude that the agreement to arbitrate does not encompass plaintiffs' affirmative claim for consequential damages in its litigation with Universal. Accordingly, we modify the scope of arbitration but otherwise affirm.
Our discussion of the procedural history and facts is limited to the matters pertinent to questions presented on this appeal. With respect to arbitration, the retainer agreement provides:
If at the conclusion of this matter our fees for services are not fully paid, adequately secured or appropriately provided for, and payment of our fees becomes an issue, you agree to participate in mediation and binding arbitration to resolve any and all fee-related disputes.... You further agree to be bound by the final decision of the arbitrator. The arbitrator shall be a mutually agreed-upon attorney, CPA or retired judge in the [S]tate of New Jersey and all matters pertaining to this agreement will be administered in the [S]tate of New Jersey under laws of New Jersey.
The agreement addressed the services to be provided, retainers, hourly billing rates, expenses and periodic payments. *303 WSB agreed to bill on a monthly basis and to "keep detailed records of time and expenses." WSB also agreed to make those records available for plaintiffs' inspection upon request and reasonable notice. Plaintiffs agreed to review the bills and raise any questions in a "timely fashion." Plaintiffs also acknowledged that WSB would rely on their acceptance of the bill as "fair and reasonable" and of plaintiffs' obligation to pay if they did not object within twenty days of receipt of the bill. Bills were to be paid within thirty days of receipt, and WSB reserved the right to terminate or discontinue services if they were not paid pursuant to the terms of the agreement. The parties also provided that all outstanding "fees" were to be paid in full prior to WSB's preparation for testifying at depositions.
A dispute arose about fees when WSB submitted its first bill for payment. These factual allegations were included in plaintiffs' complaint: the first bill included a total, "with no breakdown of hours"; WSB refused to provide documentation describing each hour billed; WSB failed to keep hourly billing records; the invoices WSB provided for its services were fraudulent in that they included double billings and billings for work that was not necessary or was not done; WSB wrongly accused plaintiffs of being in breach of their retainer agreement; WSB wrongly demanded payment in an attempt to extract payment of a compromise amount, which WSB then wrongfully declined to accept; and WSB's conduct "placed [p]laintiffs' litigation [with] their insurance carrier in great jeopardy."
In August 2006, about one month after plaintiffs commenced this litigation against WSB, WSB sought an order compelling arbitration pursuant to the retainer agreement and an order declaring that WSB was not required to continue serving as plaintiffs' expert in plaintiffs' litigation with Universal.[3] Plaintiffs opposed the motion.
The hearing on WSB's motion was conducted on September 22, 2006. At that hearing, plaintiffs disclosed for the first time that their litigation with Universal had been settled. Although the record provided on this appeal does not indicate when that settlement was reached, the parties acknowledged that the question of continued service by WSB was moot.
The trial judge considered the allegations in the complaint. On that basis, the judge determined that the parties' agreement to arbitrate applied to the fee dispute and that "any breach of contract or any breach of duty of good faith and fair dealingis part and parcel of the fee dispute." He further concluded that the arbitration agreement did not cover the torts alleged. By order dated October 26, 2006, the judge compelled arbitration in accordance with his decision.
On October 27, 2006, WSB filed its answer and counterclaim. On March 2, 2007, the judge considered whether the arbitrator should address plaintiffs' claim resting on an allegation that WSB's breach of contract and the covenant of good faith and fair dealing placed plaintiffs in a position in which they were compelled to accept an unfavorable settlement with Universal and award consequential damages upon proof of that claim. In a written decision of March 9, 2007, the judge concluded that this claim raised by plaintiffs is one for "damages flowing from the breach of the contract" that is "to be resolved through mediation [sic]." The judge also determined that the claims asserted by WSB were related to the fee dispute and subject to arbitration.
*304 On July 6, 2007, plaintiffs amended their complaint to include a claim for damages incurred as a consequence of WSB's professional malpractice. That count also seeks consequential damages including damages based upon plaintiffs' settlement with Universal.
We conclude that plaintiffs' affirmative claims seeking consequential damages for breach of contract, as opposed to plaintiffs' claims of breach urged as a defense to WSB's claim for payment due, are beyond the scope of the parties' agreement to arbitrate. Our decision is informed by a transcript of the arbitrator's preliminary decision on the scope of his authority. That transcript is before us on our grant of plaintiffs' unopposed motion to supplement the record.
This agreement to arbitrate, reached on July 12, 2005, is governed by the Uniform Arbitration Act, N.J.S.A. 2A:23B-1 to -32. N.J.S.A. 2A:23B-3(c); Wein v. Morris, 194 N.J. 364, 375, 944 A.2d 642 (2008). Absent "a ground that exists at law or in equity for the revocation of a contract," it is enforceable. N.J.S.A. 2A:23B-6(a). Plaintiffs' brief includes a point contending that in light of the nature of WSB's alleged wrongful conduct, the judge erred by directing arbitration. Plaintiffs do not, however, present any argument suggesting that there is a basis at law or in equity to revoke the arbitration clause in the retainer agreement. Accordingly, the question presented is the scope of the arbitration clause, not WSB's right to enforce it.
The interpretation of an arbitration clause is a matter of contractual construction that this court should address de novo. Hutnick v. ARI Mut. Ins. Co., 391 N.J.Super. 524, 528, 918 A.2d 729 (App.Div.), certif. denied, 192 N.J. 70, 926 A.2d 855 (2007); Fastenberg v. Prudential Ins. Co. of Am., 309 N.J.Super. 415, 420, 707 A.2d 209 (App.Div.1998); Young v. Prudential Ins. Co. of Am., Inc., 297 N.J.Super. 605, 622, 688 A.2d 1069 (App.Div.), certif. denied, 149 N.J. 408, 694 A.2d 193 (1997).
Public policy favors arbitration. See Barcon Assocs. v. Tri-County Asphalt Corp., 86 N.J. 179, 186, 430 A.2d 214 (1981). Accordingly, arbitration clauses should be construed "liberally to find arbitrability if reasonably possible." J. Baranello & Sons, Inc. v. City of Paterson, 168 N.J.Super. 502, 507, 403 A.2d 919 (App. Div.), certif. denied, 81 N.J. 340, 407 A.2d 1214 (1979) (internal quotations omitted); see Marchak v. Claridge Commons, 134 N.J. 275, 282, 633 A.2d 531 (1993); Young, supra, 297 N.J.Super. at 617, 688 A.2d 1069. Nonetheless, "a court may not rewrite a contract to broaden the scope of arbitration[.]" Fawzy v. Fawzy, 199 N.J. 456, 469, 973 A.2d 347 (2009) (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132, 773 A.2d 665 (2001)).
In construing an arbitration clause, courts must honor the intentions of the parties as set forth in the language. Quigley v. KPMG Peat Marwick, LLP, 330 N.J.Super. 252, 270, 749 A.2d 405 (App.Div.), certif. denied, 165 N.J. 527, 760 A.2d 781 (2000). The scope of arbitration is dependent on the parties' agreement. Id. at 270-71, 749 A.2d 405.
Here, the parties agreed "to participate in mediation and binding arbitration to resolve any and all fee-related disputes." The ordinary meaning of the language the parties employed encompasses any dispute related to fees earned, billed and owed under the terms of the agreement as well as all defenses to payment based on WSB's breach of its contractual duties.
The significance of a distinction between an affirmative claim for damages allegedly attributable to improper performance by one retained to render professional services *305 and a claim of improper performance raised by the client as "an affirmative defense to an action by a professional for the recovery of fees" has been recognized in other contexts. See, e.g., Charles A. Manganaro Consulting Eng'rs, Inc. v. Carneys Point Twp. Sewerage Auth., 344 N.J.Super. 343, 347, 781 A.2d 1116 (App.Div.2001). In Manganaro, that distinction led the court to hold that a client who is a defendant in an action by a professional to collect fees for services must comply with the affidavit of merit statute in order to assert a counterclaim for damages "based on `an alleged act of malpractice or negligence'" but not to "assert[ ], as an affirmative defense to an action by a professional for the recovery of fees, that the plaintiff should be denied any relief because the professional services were not properly performed." Id. at 347, 781 A.2d 1116.
In Saffer v. Willoughby, 143 N.J. 256, 670 A.2d 527 (1996), the Supreme Court addressed the distinction in the context of arbitration of a dispute about an attorney's fee in accordance with Rule 1:20A-2(a). The Court concluded:
[A] Fee Committee lacks jurisdiction to decide legal malpractice claims. But the filing of a malpractice claim does not, however, deprive the Fee Committee of jurisdiction to decide the fee dispute. In the course of deciding the reasonableness of a fee, a Fee Committee may consider evidence of malpractice for the limited purpose of affecting "the quality of services rendered in assessing the reasonableness of the fee pursuant to RPC 1.5." R. 1:20A-2(c)(2).
[Id. at 266, 670 A.2d 527.]
The arbitration clause in this agreement warrants a similar construction and procedure. The parties agreed to "binding arbitration to resolve any and all fee-related disputes." Claims of breach relevant to a reduction of the fee sought are within the scope of their agreement. Affirmative claims for consequential damages incurred as a consequence of the quality of performance or the lack of good faith and fair dealing during the course of performance, like claims of malpractice, are separate from and unrelated to the fee dispute. Those claims are not within the scope of the parties' agreement to arbitrate.
We stress that this appeal does not require us to decide whether any breach alleged by plaintiffs would provide a total defense to payment. As we understand the arbitrator's decision, he has construed the judge's orders and the parties' agreement in a manner substantially consistent with our interpretation of the agreement which is to permit his consideration of the parties' respective claims of breach of contract and breach of the covenant of good faith and fair dealing only as relevant to the fee dispute.
To the extent that the judge's decision of March 9, 2007 suggests that the arbitrator may adjudicate the question of consequential damages unrelated to the fee dispute and asserted as an affirmative claim for damages attributable to breach, it is modified to preclude the arbitrator from considering that claim. Plaintiffs' affirmative claim for consequential damages, flowing from its settlement with Universal and allegedly attributable to WSB's breach of its obligations, is not within the scope of the agreement to arbitrate and is closely related to and should be heard with plaintiffs' malpractice claim, which is currently pending before the court.
We have considered plaintiffs' objections to the order appointing the arbitrator and WSB's objection to the timeliness of this *306 appeal.[4] We have concluded that the arguments presented lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
Affirmed as modified and remanded for further proceedings.
NOTES
[1] The judge dismissed plaintiffs' claims for damages based upon fraud, tortious interference with prospective economic advantage, estoppel, breach of fiduciary duty, and violation of the Consumer Fraud Act, N.J.S.A. 56:8-1 to -184. Their claim for declaratory relief was also dismissed as were their claims against the individual defendants, who are persons who provided services to plaintiffs on behalf of WSB.
[2] We denied WSB's motion for leave to appeal on August 23, 2007, and a motion for leave to appeal was filed by plaintiffs on September 7, 2007.

This appeal is before this court on Notice of Appeal filed on September 15, 2008. In April 2008, the Supreme Court exercised its "rulemaking authority [to] amend Rule 2:2-3(a) to add an order of the court compelling arbitration to the list of orders that shall be deemed final judgments for appeal purposes." Wein v. Morris, 194 N.J. 364, 380, 944 A.2d 642 (2008). Although Rule 2:2-3(a) has not been amended in conformity with Wein, based upon the passage in Wein quoted above and the Court's reasoning, we address the merits. See R. 2:2-3(a)(3) (providing for appeal as of right in "such cases as are provided by law"); Pressler, Current N.J. Court Rules, comment 2.3.3 on R. 2:2-3 (2010) (noting "[a]n order compelling arbitration is a final judgment eligible for appeal whether or not the court stays the action pending arbitration or dismisses it" and citing Wein); see also R. 2:5-6 (authorizing grant of leave to appeal); R. 2:4-4(b) (authorizing grant of leave to appeal as within time).
[3] The application, which was made by order to show cause, was treated as a motion.
[4] WSB's objection is raised, improperly, only by reference in a footnote. R. 2:6-2; see Almog v. Israel Travel Advisory Serv., Inc., 298 N.J.Super. 145, 155, 689 A.2d 158 (App.Div.1997), appeal dismissed, 152 N.J. 361, 704 A.2d 1297, cert. denied, 525 U.S. 817, 119 S.Ct. 55, 142 L.Ed.2d 42 (1998).