**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0172-20

ROBERT HAMPTON,

    Plaintiff-Appellant,

v.

ADT, LLC, and MARK MILAM,

    Defendants-Respondents.

_____

Submitted March 17, 2021 – Decided April 30, 2021

Before Judges Geiger and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-0435-20.

Castronovo & McKinney, LLC, attorneys for appellant (Paul Castronovo and Edward W. Schroll, of counsel and on the briefs).

Ogletree, Deakins, Nash, PC, attorneys for respondents (Brian D. Lee and Michael Westwood-Booth, on the brief).

PER CURIAM

Plaintiff Robert Hampton appeals from a September 11, 2020 order compelling him to arbitrate his claim that defendants violated the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, and dismissing his amended complaint with prejudice. After carefully considering the record and applicable principles of law, we vacate the order and remand for further proceedings to determine whether plaintiff was subject to a binding arbitration agreement, and if so, whether the arbitration agreement was assigned to defendant ADT, LLC (ADT) prior to plaintiff's termination.

I.

Plaintiff was the Vice President of Business Development at MS Electronics/MSE Corporate Security, Inc. (MSE) from February 16, 2016 to August 30, 2019. Prior to commencing his employment with MSE, plaintiff signed an Employment, Confidential Information, Non-Competition and Arbitration Agreement (the Contract) prepared by MSE. The Contract contained the following arbitration clause:

> 8.     Arbitration and Equitable Relief.
>
> (a)     Arbitration. Except as provided in section 9(b) below, I agree that any dispute or controversy arising out of, relating to, or concerning any interpretation, construction, performance or breach of this agreement, shall be settled by arbitration with a single arbitrator to be held in Edison, New Jersey, in

accordance with the Employment Dispute Resolution Rules then in effect of the American Arbitration Association. The arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. The company and I shall each pay one-half of the costs and expenses of such arbitration, and each of us will separately pay our counsel fees and expenses.

This arbitration clause constitutes a waiver of my right to a jury trial and relates to the resolution of all disputes relating to all aspects of the employer/employee relationship . . . including, but not limited to, the following claims:

i. Any and all claims for wrongful discharge of employment; breach of contract, both express and implied; breach of covenant of good faith and fair dealing, both express and implied; negligent or intentional infliction of emotional distress; negligent or intentional misrepresentation; negligent or intentional interference with contract or prospective economic advantage; and defamation;

ii. Any and all claims for violation of any Federal, State or Municipal Statute, including, but not limited to, Title II of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination Act in Employment Act of 1967, the Americans with Disabilities Act of 1990 and the Fair Labor Standards Act; [and]

3

iii. Any and all claims arising out of any other laws and regulations relating to employment or employment discrimination.

(b) <u>Equitable remedies</u>. The parties may apply to any court of competent jurisdiction for a temporary restraining order, preliminary injunction or other interim or conservatory relief, as necessary, without breach of the arbitration agreement and without abridgement of the powers of the arbitrator.

(c) <u>Consideration</u>. I understand that each party's promise to resolve claims by arbitration in accordance with the provisions of this agreement, rather than through the courts, is consideration for the other party's like promise. I further understand that my employment or continued employment is consideration for my promise to arbitrate claims.

The Contract also included two provisions regarding MSE's successors and assigns. The introductory paragraph stated: "As a condition of my employment with [MSE], their parents, subsidiaries, affiliates, successors or assigns (together the 'Company'), and in consideration of my employment with the Company, I agree to the following . . . ." The Contract also included the following "General Provision[]": "<u>Successors and Assigns</u>. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns."

A-0172-20

Notably, MSE did not sign the Contract, leaving its signature line blank. Although plaintiff acknowledges that he signed the Contract, he certified that no one: (a) "told [him he] was signing an arbitration agreement"; (b) "explained the [Contract] to [him]"; (c) "ever advised [him] that [he] could bring the [Contract] home to review it"; (d) "told [him] that [he] could negotiate anything in the [Contract]"; (e) "provided [him] a fully-executed copy of the [Contract] signed by MSE, so it was [his] understanding that it never went into effect"; or (f) told him that "[w]hen ADT, LLC became [his] employer, . . . the [Contract] was in effect or that it was assigned to ADT."

In August 2017, ADT purchased the assets of MSE.[1] As part of asset purchase agreement, MSE employees became ADT employees. Plaintiff's position remained the same, and ADT did not approach plaintiff about signing a new employment contract.

Defendant Mark Milam was Vice President of ADT and plaintiff's direct supervisor. Plaintiff alleges that in mid-August 2019, Milam met with plaintiff to discuss several business accounts. During the meeting, plaintiff voiced his concern that ADT was not submitting the payroll reports required by the New Jersey Prevailing Wage Act, N.J.S.A. 34:11-56.25 to -56.47. Plaintiff also told

---

[1] The asset purchase agreement is not part of the record.

A-0172-20

Milam that he had previously raised this issue with ADT's Controller, Katie Ortiz.

On August 21, 2019, Milam informed plaintiff that his last day at ADT would be August 23, 2019. During a subsequent phone conversation, Milam extended plaintiff's employment by one week "but refused to give a reason for terminating" him.

On March 30, 2020, plaintiff commenced this action against ADT, Inc. and Milam, alleging they violated CEPA. On June 24, 2020, plaintiff filed an amended complaint, naming ADT, LLC in place of ADT, Inc. as a defendant. Plaintiff alleged he was fired by ADT "in retaliation for blowing the whistle on its legal violations." He claimed that his firing was "causally linked" to his "protected activities of disclosing, refusing to participate in, and/or objecting to [d]efendants' illegal activities on the County of Sussex account." Plaintiff demanded a jury trial and sought compensatory damages, punitive damages, attorney's fees, and costs.

On July 13, 2020, MSE assigned the Contract to ADT. One day later, in lieu of answering the amended complaint, defendants moved to compel arbitration and to dismiss plaintiff's amended complaint pursuant to Rule 4:6-2(e). Defendants argued the Law Division was not the proper forum to

A-0172-20

adjudicate plaintiff's claims because the arbitration provisions of the Contract were valid and enforceable, and plaintiff's CEPA claim fell within the enumerated causes of action the parties agreed to arbitrate. They further argued that the Contract contained a delegation clause, which required "any dispute or controversy arising out of, relating to, or concerning any interpretation, construction, performance, or breach of [the Contract]" to be "settled by arbitration." They claimed that any issue regarding arbitrability of plaintiff's claims must also be decided by the arbitrator.

Defendants contend that MSE's signature was not necessary to bind the parties to arbitration, citing an unpublished federal district court opinion for the proposition that an employer need not sign an arbitration contract to bind an employee to arbitration even where there is a signature line. In addition, defendants contended that only plaintiff's signature was needed since he was the party to be charged under the contract, citing Leodori v. CIGNA Corp., 175 N.J. 293, 304-05 (2003).

On September 11, 2020, the judge granted defendants' motion in its entirety. The amended complaint was dismissed with prejudice and plaintiff was compelled to arbitrate his "legal claims against defendants in accordance with the terms of [the Contract]."

A-0172-20

In his written statement of reasons, the judge first found the Contract enforceable despite MSE's missing signature, citing Byrne and stating, "when both parties have agreed to be bound by arbitration and adequate consideration exists, the arbitration agreement should be enforced." Second, the judge found plaintiff knowingly agreed to arbitrate various claims and that this requirement "does not create obligations that [plaintiff] was not asked to agree to from the beginning of the relationship." Third, the judge found ADT was the assignee of the Contract, which permits non-signatories to enforce arbitration agreement under the contract principles of assumption, assignment, and succession. Fourth, the judge found that although the arbitration clause "does not specifically reference CEPA as an arbitrable claim, our [c]ourts have consistently ruled that despite the omission of a specific statutory claim, the arbitration provision will still be enforceable when" it contains an "any and all claims" catch-all provision. Fifth, the judge found the cost-sharing provision, which required plaintiff to pay one-half of the costs of arbitration, was moot because the American Arbitration Association (AAA) limits a plaintiff's financial burden to paying the initial filing fee. It also found this provision was severable. This appeal followed.

Plaintiff raises the following points for our consideration:

A-0172-20

I.   THERE IS NO MUTUAL ASSENT BECAUSE PLAINTIFF'S PRIOR EMPLOYER NEVER SIGNED OR ASSIGNED THE ARBITRATION AGREEMENT BEFORE THIS ACTION.

A.   The Agreement Fails Because it is Not Mutually Executed.

B.   The Post-Litigation Assignment Proves Lack of Mutual Assent.

II.   PLAINTIFF DID NOT KNOWINGLY AND VOLUNTARILY AGREE TO WAIVE HIS CEPA RIGHT TO A JURY TRIAL.

III.   THE ARBITRATION AGREEMENT IS UNCONSCIONABLE.

II.

Rule 4:6-2(e) permits dismissal of a complaint that fails to state a claim upon which relief can be granted.  When deciding a Rule 4:6-2(e) motion, "all facts alleged in the complaint and legitimate inferences drawn therefrom are deemed admitted."  Rieder v. State Dept. of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987) (quoting Smith v. City of Newark, 136 N.J. Super. 107, 112 (App. Div. 1975)).  "On appeal, we apply a plenary standard of review from a trial court's decision to grant a motion to dismiss pursuant to Rule 4:6-2(e)." Rezem Fam. Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114

9

(App. Div. 2011) (citing <u>Sickles v. Cabot Corp.</u>, 379 N.J. Super. 100, 106 (App. Div. 2005)).  "We owe no deference to the trial court's conclusions."  <u>Ibid.</u>

"Our standard of review of the validity of an arbitration agreement, like any contract, is de novo."  <u>Morgan v. Sandford Brown Inst.</u>, 225 N.J. 289, 302 (2016) (citing <u>Atalese v. U.S. Legal Servs. Grp., L.P.</u>, 219 N.J. 430, 446 (2014)).  We likewise "apply a de novo standard of review when determining the enforceability of . . . arbitration agreements."  <u>Goffe v. Foulke Mgmt. Corp.</u>, 238 N.J. 191, 207 (2019) (citing <u>Hirsch v. Amper Fin. Servs., LLC</u>, 215 N.J. 174, 186 (2013)).  Reviewing courts "owe no deference" to a trial court's "interpretative analysis."  <u>Morgan</u>, 225 N.J. 303 (citing <u>Atalese</u>, 219 N.J. at 445-46).  "We therefore construe the arbitration provision with fresh eyes."  <u>Ibid.</u> (citing <u>Kieffer v. Best Buy</u>, 205 N.J. 213, 223 (2011)).

The "interpretation of an arbitration clause is a matter of contractual construction . . . ."  <u>NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp.</u>, 421 N.J. Super. 404, 430 (App. Div. 2011) (quoting <u>Coast Auto. Grp., Ltd. v. Withum Smith & Brown</u>, 413 N.J. Super. 363, 369 (App. Div. 2010)).  "State law governs not only whether the parties formed a contract to arbitrate their disputes, but also whether the parties entered an agreement to delegate the issue

of arbitrability to an arbitrator."  Morgan, 225 N.J. at 303 (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).

To be enforceable, an agreement requires mutual assent.  Id. at 308 (citing Atalese, 219 N.J. at 442); accord Barr v. Bishop Rosen & Co., Inc., 442 N.J. Super. 599, 605-06 (App. Div. 2015) ("An agreement to arbitrate 'must be the product of mutual assent, as determined under customary principles of contract law.'" (quoting Atalese, 219 N.J. at 442)).  "Mutual assent requires that the parties have an understanding of the terms to which they have agreed" or, in other words, a "meeting of the minds."  Atalese, 219 N.J. at 442 (quoting Morton v. 4 Orchard Land Tr., 180 N.J. 118, 120 (2004)).

"The Federal Arbitration Act (FAA), 9 [U.S.C.] §§ 1-16, and the nearly identical New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, enunciate federal and state policies favoring arbitration."  Atalese, 219 N.J. at 440 (citing AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)).  "[O]ur jurisprudence has recognized arbitration as a favored method for resolving disputes."  Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 131 (2001).  We therefore review orders compelling or denying arbitration "mindful of the strong preference to enforce arbitration agreements, both at the state and federal level."  Hirsch, 215 N.J. at 186.  "However, the

A-0172-20

preference for arbitration 'is not without limits.'" Id. at 187 (quoting Garfinkel, 168 N.J. at 132).

"In accordance with the FAA '[judges] must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms.'" Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 132 (2020) (second alteration in original) (quoting Concepcion, 563 U.S. at 339). A written agreement to submit to arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see Martindale v. Sandvik, 173 N.J. 76, 84 (2002).

Despite the national policy favoring arbitration, "the law presumes that a court, not an arbitrator, decides any issue concerning arbitrability." Morgan, 225 N.J. at 304 (citing First Options, 514 U.S. at 944). "[T]o overcome the judicial-resolution presumption, there must be 'clea[r] and unmistakabl[e]' evidence 'that the parties agreed to arbitrate arbitrability.'" Ibid. (alterations in original) (quoting First Options, 514 U.S. at 944). "Silence or ambiguity in an agreement does not overcome the presumption that a court decides arbitrability." Ibid. (citing First Options, 514 U.S. at 944).

The agreement to arbitrate may include a waiver of statutory remedies in favor of arbitration. Garfinkel, 168 N.J. at 131. An otherwise valid agreement

12

to arbitrate claims arising under CEPA is enforceable.  Young v. Prudential Ins. Co. of Am., 297 N.J. Super. 605, 619 (App. Div. 1997).  There is "no prescribed set of words [that] must be included . . . to accomplish a waiver of rights." Atalese, 219 N.J. at 447.  The Atalese Court emphasized that

> when a contract contains a waiver of rights—whether in an arbitration or other clause—the waiver "must be clearly and unmistakably established."  Thus, a "clause depriving a citizen of access to the courts should clearly state its purpose."  We have repeatedly stated that "[t]he point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue."
>
> [Id. at 444 (alterations in original) (citations omitted) (quoting Garfinkel, 168 N.J. at 132).]

"In evaluating the existence of an agreement to arbitrate, a court 'consider[s] the contractual terms, the surrounding circumstances, and the purpose of the contract.'"  Hirsch, 215 N.J. at 188 (alteration in original) (quoting Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282 (1993)). However, "[a] party who enters into a contract in writing, without any fraud or imposition being practiced upon him, is conclusively presumed to understand and assent to its terms and legal effect." Roman v. Bergen Logistics, LLC, 456 N.J. Super. 157, 174 (App. Div. 2018) (alteration in original) (quoting Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353 (1992)).

13

Accordingly, "[a]n employee who signs but claims to not understand an arbitration agreement will not be relieved from an arbitration agreement on those grounds alone." Ibid.

Plaintiff does not contend he did not sign or assent to the arbitration agreement. See Leodori, 175 N.J. at 303 (finding an "explicit, affirmative agreement that unmistakably reflects the employee's assent" is sufficient to bind an employee to arbitration). Instead, he contends on appeal that MSE's failure to sign the arbitration agreement makes it unenforceable because there was no meeting of the minds between the parties. In response, defendants rely upon unpublished cases[2] for the proposition that an employer's signature on an arbitration agreement is not necessary.

Contract formation issues relating to an arbitration agreement containing a delegation clause are properly resolved by the trial court, not an arbitrator. See Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 107 (3d Cir. 2000) (holding a court must examine a person's signatory authority because agreement to a contract "is a necessary prerequisite to the court's fulfilling its role of determining whether the dispute is one for an arbitrator to decide under the terms of the arbitration agreement"); see also Spahr v. Secco, 330 F.3d 1266, 1272

---

[2] See R. 1:36-3 (stating that unpublished opinions are not binding on this court).

A-0172-20

(10th Cir. 2003) (holding a court must decide whether a party had sufficient mental capacity to enter into a contract containing an arbitration provision); Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 297 (2010) ("To satisfy itself that [an arbitration] agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce."). Consistent with these principles, a trial court should decide a dispute as to whether a party assented to the terms of an arbitration contract, including a provision delegating disputes over arbitrability to the arbitrator.

## III.

Guided by these legal principles, we conclude that unresolved controlling facts precluded the dismissal of plaintiff's complaint under Rule 4:6-2(e). Accordingly, we vacate the order dismissing plaintiff's amended complaint and compelling arbitration.

Notably, the Contract does not expressly state that plaintiff waived his right to sue in court. Rather, it states that the "arbitration clause constitutes a waiver of [his] right to a jury trial" and that he "expressly consent[s] to the personal jurisdiction of the state and federal courts located in New Jersey for any lawsuit arising from or related to [the Contract]. . . ."

A-0172-20

Defendants argue that the first sentence and paragraph 9(d) of the Contract is controlling. The first sentence states: "As a condition of my employment with [MSE], their . . . successors or assigns (together the 'Company'), and in consideration of my employment with the Company and my receipt of compensation now and hereafter paid to me by [the] Company, I agree to the following" terms of the Contract. In turn, paragraph 9(d) states: "<u>Successors and Assigns</u>. This [Contract] will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns." We are unpersuaded given the limited record presented to the trial court and this court.

Viewing the facts in a light most favorable to the non-moving plaintiff, the motion record demonstrates that: (a) MSE did not sign the Contract; (b) MSE did not provide plaintiff with an executed copy of the Contract; and (c) when ADT became plaintiff's employer, neither MSE nor ADT advised plaintiff that the Contract had been assigned to ADT.

Defendants rely on unpublished and out-of-state opinions in support of the proposition that an arbitration agreement does not necessarily have to be signed by the employer. However, we are bound by <u>Rule</u> 1:36-3, which states: "No unpublished opinion shall constitute precedent or be binding upon any

court." Unreported decisions "serve no precedential value, and cannot reliably be considered part of our common law." Trinity Cemetery v. Wall Twp., 170 N.J. 39, 48 (2001) (Verniero, J., concurring) (citing R. 1:36-3). Likewise, published opinions from other jurisdictions are not binding on the courts of this state. Lewis v. Harris, 188 N.J. 415, 436 (2006); In re Adoption of N.J.A.C. 13:38-1.3(f), 341 N.J. Super. 536, 546 (App. Div. 2001).

The trial court found both parties agreed to be bound by the Contract, plaintiff accepted the employment offer, and worked as Vice President of Business Development for approximately three years, thereby providing adequate consideration for the Contract. Relying on unpublished and other non-binding opinions, the trial court found the Contract was mutually agreed upon and enforceable against both parties. Whether MSE intended to waive its right to a jury trial or to contest plaintiff's claims in court is a fact-sensitive analysis. Those facts are not part of the record.[3] As such, vacating the order and remanding is required to better understand whether MSE intended to be bound by the Contract as reflected by discovery.

---

[3] We also note that by not signing the Contract, MSE ostensibly created a win-win situation depending on the adventitiousness of arbitration—MSE or its assignee could either disavow the arbitration clause if it preferred a jury trial or non-jury court proceedings, claiming it's not bound because of its omitted signature, or, as here, compel arbitration because arbitration suited it.

A-0172-20

MSE subsequently entered into an asset purchase agreement with ADT, which is also not part of the record. Consequently, the terms of the asset purchase agreement are unknown. This missing information is vital to deciding the issues in this appeal. Without knowing the terms of the asset purchase agreement, we are unable to determine if MSE assigned its rights under the Contract to ADT or whether ADT assumed MSE's obligations under the Contract. As a result, defendants did not establish that ADT had the right, through assignment by MSE, to enforce the arbitration clause against plaintiff.

Defendants' reliance on unpublished case law discussing concepts of the assignment of rights and the assumption of obligations through merger is also misplaced. Unlike mergers, an asset purchase agreement does not necessarily involve the assumption of obligations or the assignment of contractual rights. See 106 W. Broadway Assocs., LP v. 1 Mem. Drive, LLC, ___ N.J. Super. ___, ___ (App. Div. 2021) (slip op. at 14-16) (recognizing the general principle that "a corporation purchasing only the assets of another corporation [is] not liable for the debts and liabilities of the selling corporation" and discussing the four fact-sensitive exceptions to this principle (quoting Stuart L. Pachman, Title 14A Corporations, cmt. 5(b)(1) on N.J.S.A. 14A:10 (2021))). More particularly, a successor employer does not automatically assume its predecessor's

employment contracts in an asset purchase.  See In re Allegheny Health, Educ. & Rsch. Found., 383 F.3d 169, 179 (3d Cir. 2004) (stating that "a successor employer is not automatically bound by its predecessor's collective bargaining agreements").

Further, the subsequent July 13, 2020 assignment of the Contract to ADT does not militate in defendants' favor.  The assignment agreement came long after ADT purchased the assets of MSE in August 2017.  It also came more than ten months after plaintiff's whistle blowing and alleged retaliatory termination. Most notably, it came more than three months after plaintiff filed this action and just one day before defendants filed their motion to dismiss.  While defendants attempt to marginalize the import of the assignment agreement, referring to it as a mere "belt and suspenders" approach, we view the decision to enter into the assignment agreement as at least circumstantial evidence that MSE and ADT did not believe the Contract had been assigned to ADT.

The trial court's finding that ADT is the assignee of the Contract is not supported by the limited record.  Analysis of the terms of the asset purchase agreement and the reason MSE subsequently assigned the Contact is required. To that end, related discovery is also required.

Because these threshold issues are presumably decided by the court, rather than an arbitrator, and that presumption has not been overcome by clear and unmistakable evidence, we are constrained to vacate the order dismissing plaintiff's amended complaint and compelling him to arbitrate and remand for further proceedings. See Morgan, 225 N.J. at 305 (discussing the need for "clear and unmistakable language evidencing an agreement to delegate arbitrability").

Plaintiff also argues that the Contract is unconscionable because it requires plaintiff to pay one-half of the costs of arbitration. The judge found that argument moot because AAA rules limit plaintiff's financial burden to paying the initial filing fee. The judge also found the clause unconscionable but severable. The Contract contains a severability clause, which states: "If one or more of the provisions in this [Contract] are deemed void by law, then the remaining provisions will continue in full force and effect." "[I]f a contract contains an illegal provision, if such provision is severable [we] will enforce the remainder of the contract after excising the illegal position." Roman, 456 N.J. Super. at 170 (alterations in original) (quoting Naseef v. Cord, Inc., 90 N.J. Super. 135, 143 (App. Div.), aff'd, 48 N.J. 317 (1966)). We are satisfied that the unenforceable cost-sharing provision is severable and must be severed from

the Contract.  See id. at 171 (severing an unenforceable prohibition against the recovery of punitive damages).

Finally, we note that the Contract also provides that each party "will separately pay [their] counsel fees and expenses."  Measured against the standard employed by the Court in Rodriguez v. Raymours Furniture Co., 225 N.J. 343, 363-66 (2016),[4] we are persuaded that the Contract's attempted waiver of the right to seek an award of reasonable counsel fees and costs under N.J.S.A. 34:19-13(d) is unenforceable because it violates the public policy embodied in CEPA.  See Roman, 456 N.J. Super. at 167 (deeming an arbitration agreement's bar of punitive damages under the New Jersey Law against Discrimination, N.J.S.A. 10:5-1 to -50, unenforceable).  We are satisfied that the unenforceable waiver of the statutory right of a prevailing plaintiff to recover reasonable counsel fees and costs under CEPA is severable and must be severed from the Contract.

## IV.

In summary, material facts on the threshold issues of contract formation, assignment, assumption, and resulting enforceability are disputed and cannot be

---

[4]  Rodriguez involved a claim under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -42.  Its reasoning applies with equal force to recovery of reasonable counsel fees and costs under CEPA.

A-0172-20

resolved on this limited record. We therefore vacate the September 11, 2020 order and remand for further proceedings. The remand court shall conduct a management conference within thirty days. We leave it to the sound discretion of the trial court to determine the scope and timing of discovery to be afforded to the parties related to the threshold issues.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION