# RECORD IMPOUNDED

---

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

---

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3846-24

J.H.,

    Plaintiff-Respondent,

v.

THE LAWRENCEVILLE
SCHOOL, 2500 MAIN STREET,
LAWRENCEVILLE, NJ 08648,

    Defendant-Appellant.

_____

> Argued January 8, 2026 – Decided January 28, 2026
>
> Before Judges Mawla, Marczyk, and Bishop-Thompson.
>
> On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0992-25.
>
> Brendan N. Gooley (Carlton Fields, PA) of the Connecticut Bar, admitted pro hac vice, argued the cause for appellant (Carlton Fields, PA, and Brendan N. Gooley, attorneys; Jorkeell Echeverria, James M. Sconzo, and Brendan N. Gooley, of counsel and on the brief).

Corrie Woods (Kline & Specter, PC) of the Pennsylvania, West Virginia, United States District Court for the Western District of Pennsylvania, United States Court of Appeals for the Third Circuit, and United States Court of Appeals for the District of Columbia Circuit bars, admitted pro hac vice, argued the cause for respondent (Kline & Specter, PC, and Corrie Woods, attorneys; Charles L. Becker, Lorraine H. Donnelly, Ruxandra M. Laidacker, and Corrie Woods, on the brief).

PER CURIAM

We granted defendant The Lawrenceville School leave to appeal from a July 8, 2025 order denying its motion to dismiss and compel arbitration of plaintiff J.H.'s claims arising from a 2019 sexual assault committed by one of the school's former employees. Having considered the record and the applicable legal principles, we reverse in part and affirm as modified in part for the reasons expressed in this opinion.

In 2019, J.H. was a freshman boarding student at the school when the sexual assault occurred. The school employee was subsequently charged with sexually assaulting J.H. and another student, and showing pornography to and having a sexually explicit conversation with a third student. The employee pleaded guilty to three counts of endangering the welfare of a child.

J.H. continued to attend the school following the assault. Each year, the school sent a re-enrollment agreement to J.H.'s parent, which they would execute

to enroll him for the subsequent school year.  On March 1, 2022, J.H.'s father executed a re-enrollment agreement for J.H.'s senior year, the 2022-2023 school year.  In May 2025, J.H. filed a four-count complaint against the school alleging: violation of the Child Sex Abuse Act (CSAA), N.J.S.A. 2A:61B-1; negligence and gross negligence; negligent hiring, retention, and supervision; and vicarious liability for assault and battery.

Counsel for the school advised J.H.'s counsel his claims were subject to arbitration pursuant to the arbitration provision in the 2022-2023 re-enrollment agreement and demanded withdrawal of the complaint and that the matter proceed to arbitration.  Counsel for J.H. requested the school provide copies of the enrollment agreements for each year J.H. attended the school because only the 2022-2023 agreement had been provided.  The school's counsel responded the prior agreements were irrelevant because the 2022-2023 agreement controlled as it contained a merger clause.

The school moved to compel arbitration pursuant to the 2022-2023 agreement.  In opposition, J.H.'s father certified:  the school never asked him to waive his right to a jury trial for the 2019 sexual assault; he never intended to waive the right to a jury trial; the school never explained there was an arbitration agreement embedded in the 2022-2023 agreement; and the agreement, which

3

governed the 2022-2023 school year, did not apply to claims, which arose prior to that school year.

At oral argument, the school's counsel urged the motion judge to read the entire agreement, which included an integration clause stipulating it superseded all prior agreements and therefore controlled the relationship between the parties. The school's counsel noted J.H. argued the Ending Forced Arbitration of Sexual Assault and Harassment Act of 2021 (EFAA), 9 U.S.C. §§ 401-02, barred arbitration of his claims. Counsel argued the EFAA was not persuasive authority because the "[t]he Legislature had the opportunity to address the EFA[A for claims like J.H.'s] and didn't. . . . In contrast, [the Legislature] did address it in the context of [the New Jersey Law Against Discrimination, (LAD) N.J.S.A. 10:5-1 to -50] claims . . . ."

J.H.'s counsel argued the arbitration agreement was unenforceable because there was no mutual assent to arbitrate the 2019 dispute. The 2022-2023 re-enrollment agreement was unambiguous and clear it applied only to that school year. The parties' dispute arose in 2019.

The motion judge found there was "clearly no meeting of the minds that signing the 2022[-]2023 . . . re-enrollment agreement would have the legal effect of waiving [J.H.'s] right to [a] jury trial for a sexual assault dispute that arose in

4

2019." The provision of the agreement, which denoted it only applied to the 2022-2023 academic year, reads as follows: "This Enrollment Agreement ("Agreement") is for the 2022-2023 academic year only. This Agreement is contingent upon the Student's successful completion of the 2021-2022 academic year in good academic, disciplinary, and financial standing, as determined by the School in its sole discretion." The judge found the first sentence was not confusing and the second sentence did not modify the first.

In relevant part, the arbitration integration provisions read as follows:

> 19) Applicable Law, Jurisdiction, Arbitration, Jury Waiver, Severability
>
> This Agreement, and all rights and obligations provided for herein, will be governed by the laws of the State of New Jersey, without regard to conflict of law principles. The exclusive jurisdiction and venue for any dispute or claim arising out of or related to this Agreement, the relationship created by this Agreement, or the Student's enrollment at or withdrawal or dismissal from the School, such as claims for contract, tort (including claims for negligence due to personal injury or death to the student) or statute (including, without limitation, claims for harassment, discrimination or failure to make a reasonable accommodation under the [LAD]), shall be determined by arbitration in Lawrence Township, New Jersey, before a single arbitrator that the parties select.
>
> By signing this agreement, I am agreeing not only to arbitrate all of my claims and disputes against the School but I am also agreeing to arbitrate all of the

5

claims and disputes the Student may have against the School.

**I understand and agree that arbitration is my sole remedy for any dispute or claim arising out of or related to this Agreement, and that I am waiving my right to sue and to have my claims adjudicated in a court of law, including by a jury. I also understand and agree that the decision of the arbitrator shall be final and binding.**

. . . .

By signing this Agreement, I agree on my behalf and that of the Student to waive any claim or right to a trial by jury.

. . . .

20) Entire Agreement

This Agreement constitutes the entire agreement of the parties relating to the Student's enrollment in the School, and it supersedes all prior agreements between the parties. . . .

The judge concluded a reasonable person reading all the provisions together would not "kn[o]w they were waiving their right to sue for what happened in 2019 for a sexual assault by signing [the re-enrollment agreement] in 2022[-]2023."

6

I.

On appeal, the school argues the arbitration agreement clearly provides all claims and disputes arising out of J.H.'s enrollment must be resolved through arbitration, which serves as the exclusive jurisdiction and venue for such matters. The agreement provided all claims J.H. has, and may have, against the school are subject to arbitration. The waiver of the right to a jury trial was also explicit in the agreement.

The school further argues the agreement encompasses J.H.'s claims because it applies to "any dispute or claim arising out of or related to [the a]greement, the relationship created by [the a]greement, or the [s]tudent's enrollment at . . . the [s]chool." J.H.'s sexual assault was related to his enrollment because it occurred while he was attending the school. The agreement could not be ambiguous because J.H.'s father was aware of the claims when he signed the 2022-2023 re-enrollment agreement.

The school asserts the motion judge misread the re-enrollment agreement to find an ambiguity when he construed the provision about the agreement applying only to the 2022-2023 school year, which was not a part of the arbitration provision. Not only did the sentence not alter the arbitration provision, it also pertained to the school's policy of not guaranteeing students'

7

future enrollment. Likewise, the express language of the arbitration provision did not limit it to a particular school year. The school also points to the integration provision, which makes clear the 2022-2023 re-enrollment agreement is the only agreement between the parties. Thus, it argues the court's finding there was no mutual assent was erroneous.

Under both the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, and the New Jersey Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -36, arbitration is a matter of contract. 9 U.S.C. § 2; NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424-25 (App. Div. 2011). Arbitration agreements are subject to customary contract law principles. Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442 (2014).

In reviewing orders granting or denying a motion to compel arbitration, "we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013). The FAA "and the nearly identical [NJAA] enunciate federal and state policies favoring arbitration." Atalese, 219 N.J. at 440 (citation omitted).

This preference, "however, is not without limits." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001). "[T]he FAA 'permits states to regulate . . . arbitration agreements under general

contract principles,' and a court may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of any contract.'" Atalese, 219 N.J. at 441 (omission in original) (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 85 (2002)).

As such, "[g]enerally applicable contract defenses . . . may be applied to invalidate arbitration agreements without contravening [the FAA]." Muhammad v. Cnty. Bank of Rehoboth Beach, 189 N.J. 1, 12 (2006) (quoting Dr.'s Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)). Arbitration agreements, however, "may not be subjected to more burdensome contract formation requirements than [those] required for any other contractual topic." Martindale, 173 N.J. at 83; see also Skuse v. Pfizer, Inc., 244 N.J. 30, 47 (2020).

Arbitration clauses should be construed "liberally 'to find arbitrability if reasonably possible.'" J. Baranello & Sons, Inc. v. City of Paterson, 168 N.J. Super. 502, 507 (App. Div. 1979) (quoting Moreira Constr. Co. v. Twp. of Wayne, 98 N.J. Super. 570, 576 (App. Div. 1968)). A court may not alter the scope of an arbitration provision. Fawzy v. Fawzy, 199 N.J. 456, 469 (2009). Rather, "[i]n construing an arbitration clause, courts must honor the intentions of the parties as set forth in the language." Coast Auto. Grp., Ltd. v. Withum Smith & Brown, 413 N.J. Super. 363, 369 (App. Div. 2010). "The scope of

9                                                                           A-3846-24

arbitration is dependent on the parties' agreement." Ibid. "[D]oubts concerning the scope of arbitrable issues must be resolved in favor of arbitration, over litigation." Alfano v. BDO Seidman, LLP, 393 N.J. Super. 560, 576 (App. Div. 2007). "[C]ourts should not focus 'on one sentence of [a contract] . . . to the exclusion of the balance of the contract. Such an interpretation is distorted and legally inappropriate.'" Werner Indus., Inc. v. First State Ins. Co., 112 N.J. 30, 37 (1988) (quoting Wurth v. Ideal Mut. Ins. Co., 518 N.E.2d 607, 612 (1987)).

We apply a de novo review to a contract and owe no special deference to the trial court's interpretation. Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011). "Our approach in construing an arbitration provision of a contract is governed by the same de novo standard of review." Atalese, 219 N.J. at 446.

Pursuant to these principles, we part ways with the motion judge's interpretation of the re-enrollment agreement. To reiterate, the provision the judge cited to invalidate the arbitration agreement read as follows: "This Enrollment Agreement ("Agreement") is for the 2022-2023 academic year only. This Agreement is contingent upon the Student's successful completion of the 2021-2022 academic year in good academic, disciplinary, and financial standing, as determined by the School in its sole discretion." Contrary to the judge's finding, the second sentence explains the intent of the first sentence,

which was not to guarantee re-enrollment if a student and their parent did not meet their obligations. Nothing in either sentence mentions arbitration, let alone demonstrates an intent to limit arbitrable claims only to those which arose during the 2022-2023 school year.

Aside from the fact this language is separated from the arbitration provision by five pages and eighteen other provisions, we do not construe it as imposing a temporal limitation on the arbitration provision because doing so would invalidate other paragraphs, which clearly are not temporally limited. The following provisions demonstrate our point:

> 12) School Name
>
> I agree that I am not authorized to use the School's name (The Lawrenceville School), any likeness of or reference to the School's name (e.g., "Lawrenceville"), or crest or logo in any way, including to describe any event, outing, club, sports team, group, or other activity ("Group") that the Student or I may organize or lead or in which the Student or I may participate, without the express written permission of the Office of Communications. If the Student or I participate in any activity that uses the School's name or a name like or resembling the School's name or logo that is parent-organized or led by others, including current and former School faculty, I understand that the Group is not sponsored or endorsed by the School unless I receive written notice from the Office of Communications stating that the Group has been recognized by the School. I understand that any questions about whether

a Group is sponsored by the School should be directed to the Office of Communications[.]

13) Student Media Information Waiver

I understand that the School's ability to portray its program accurately and vibrantly depends on families' support of the School's use of images of students and students' work. Therefore, unless I otherwise notify the School at ****@lawrenceville.org, I authorize the School, its successors and assigns, and those acting within its permission and upon its authority, to use the Student's name, grade, photographic image (including, but not limited to, portrait, picture, video, or other reproductions), audio recordings of the Student's voice, video recordings of the Student, and likeness, in written or electronic format, and reproductions of the Student's work, including media from a remote learning context (collectively referred to herein as "Student Media Information") in the School's publications, marketing and promotional materials, website, press releases, advertising media, and/or social media accounts (including, but not limited to, Facebook and Instagram). Furthermore, I authorize the School to use the Student Media Information, as described herein, on more than one occasion, without limitation to the number of times it is used, <u>in perpetuity</u> and understand that neither I nor the Student shall be entitled to receive any compensation for such use. I waive the right to inspect or approve the finished product, including written or electronic copy, wherein the Student Media Information appears. I acknowledge the School's right to crop or alter any photographic image of the Student at its discretion.

If the Student receives an endowed fund scholarship, fellowship, or other reward, I authorize the release of the Student's name, hometown, House-affiliation,

12

A-3846-24

grade, image, and any other evaluative information to the donor or the donor's authorized representative.

I hereby release the School, its successors and assigns, and those acting within its permission and upon its authority, from any liability, responsibility, or claim that may arise from the School's use of the Student Media Information or release of Student information as described above. Media release permission is not shared with students or parents and does not ensure Student Media Information will not appear, if published by a student, parent, or other individual, or in student-run publications or student-run social media sites. While the School strives to abide by parent/guardian wishes, it does not guarantee incidental uses of a student's name or image will never occur.

[(Emphasis added).]

Pursuant to paragraph twelve, if the unauthorized use of the school's name were limited to the 2022-2023 school year, a student who graduated or left the school before or after the 2022-2023 term could improperly use its name without consequence. As we highlighted, the student media waiver in paragraph thirteen is "in perpetuity" and not limited to the 2022-2023 school year. Like these paragraphs, the arbitration provision makes no mention of the 2022-2023 school year, let alone limiting disputes, which may arise between the parties to that school term.

The arbitration provision uses broad language denoting J.H. and his father agreed to arbitrate "all" their claims against the school. A separate paragraph of

13

the provision states the parties' "claims for . . . tort (<u>including</u> claims for negligence due to personal injury or death to the student) or statute (<u>including, without limitation</u>, claims for harassment, discrimination or failure to make a reasonable accommodation under the [LAD]), shall be determined by arbitration." (Emphasis added).  At oral argument before us, J.H. asserted the "including" and "including, without limitation" language limited the types of tort and statutory claims the parties contracted to arbitrate.  We are unconvinced.

"It is settled that . . . 'includes' is usually a term of enlargement, not of limitation.  It conveys the conclusion that there are other items includable, though not specifically enumerated." <u>Zorba Contractors, Inc. v. Hous. Auth. of Newark</u>, 282 N.J. Super. 430, 434 (App. Div. 1995).  We have reached a similar inclusion when "[t]he addition of . . . several specific [items], and others of like effect, is introduced by the phrase, 'including but not limited to.'" <u>State v. Lisa</u>, 391 N.J. Super. 556, 568 (App. Div. 2007).  Our courts have consistently held the use of the term "include" signifies enlargement rather than limitation.

For these reasons, we conclude the motion judge should not have invalidated the arbitration agreement.  This, however, does not end the inquiry.

A-3846-24

II.

J.H. was sexually assaulted when he was a minor. As we recounted, he asserted several claims, including one under the CSAA. Although J.H.'s submissions to the motion judge argued arbitration was prohibited pursuant to the EFAA and the school claimed it was not, the judge did not address the issue. At oral argument before us, the school alleged the EFAA was inapplicable because it was enacted on March 3, 2022, and the 2022-2023 re-enrollment agreement was signed on March 1, 2022. This argument does not appear to have been raised before the motion judge.

We typically do not address questions not properly presented to a trial court, unless the issue raised relates to the jurisdiction of the trial court or concerns a matter of great public interest. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Because the sexual abuse of children squarely concerns a matter of great public interest, we address the applicability of the EFAA to this case.

Congress enacted the EFAA, which amended the FAA and it states: "no pre[-]dispute arbitration agreement or pre[-]dispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under . . . [s]tate law and relates to [a] sexual assault dispute or [a] sexual harassment dispute." 9

15

U.S.C. § 402(a). We recently observed "[t]he EFAA was enacted on March 3, 2022, and thus only applies to claims that accrued on or after that date." McDermott v. Guaranteed Rate, Inc., ___ N.J. Super. ___, ___ (App. Div. 2025) (slip op. at 31).

N.J.S.A. 2A:61B-1(b) states:

> In any civil action for injury or illness based on sexual abuse, the cause of action shall accrue at the time of reasonable discovery of the injury and its causal relationship to the act of sexual abuse. Any such action shall be subject to the statute of limitations set forth in [N.J.S.A. 2A:14-2a].

N.J.S.A. 2A:14-2a(a)(1) provides:

> Every action at law for an injury resulting from the commission of sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined in [N.J.S.A. 2A:30B-2], or sexual abuse as defined in [N.J.S.A. 2A:61B-1] against a minor under the age of [eighteen] that occurred prior to, on or after the effective date of [N.J.S.A. 2A:14-2a,] et al.[,] shall be commenced within [thirty-seven] years after the minor reaches the age of majority, or within seven years from the date of reasonable discovery of the injury and its causal relationship to the act, whichever date is later.

"As a result, regardless of when the cause of action accrued, i.e., when it was reasonably discoverable that the sexual abuse of a child caused injuries, a complaint is timely if filed before the plaintiff reaches fifty-five years of age." W.S. v. Hildreth, 470 N.J. Super. 57, 64 (App. Div. 2021).

The Supreme Court has interpreted N.J.S.A. 2A:61B-1(b)'s "any civil action" language to "include[] any common-law claims based on conduct that falls within the definition of sexual abuse, and that such claims may be brought under the liberal tolling provision associated with the two-year statute of limitations in the CSAA." Hardwicke v. Am. Boychoir Sch., 188 N.J. 69, 100 (2006). Similarly, in McDermott, the plaintiff challenged the trial "court's order [which] applied the EFAA to bar from arbitration only those counts in her fourteen-count complaint related to the [LAD]." ___ N.J. Super. at ___ (slip op. at 3). We held all the plaintiff's claims should have been deemed non-arbitrable because

> the plain and unambiguous language of the EFAA . . . invalidates pre-dispute arbitration agreements with respect to an entire "case" relating to sexual harassment or assault, rather than only to discrete claims. Congress deliberately used the broader term "case," and courts interpreting the EFAA have widely agreed that its protection applies to all claims within such an action.
>
> [Id. at ___ (slip op. at 33).]

For these reasons, we conclude J.H.'s claims were not barred by the statute of limitations. Moreover, all his claims are barred from arbitration.

Finally, we have decided on the EFAA issue, despite the fact the parties did not brief it, because it was raised on a limited basis before the motion judge.

17

More importantly, we are unconvinced further briefing or a remand to the motion judge would lead us to a different result. In the end, the judge reached the correct result for incorrect reasons. "But it is well-settled that appeals are taken from orders and judgments and not from opinions . . . or reasons given for the ultimate conclusion." Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001). For these reasons, the order barring the arbitration of J.H.'s claims is affirmed as modified.

Reversed in part and affirmed as modified in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division